UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| TEGAN S., | : | |
|       Plaintiff, | : | |
| | : | |
|       v. | : | C.A. No. 20-307PAS |
| | : | |
| ANDREW M. SAUL, | : | |
| Commissioner of Social Security, | : | |
|       Defendant. | : | |

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

A college educated "younger person" in Social Security parlance, Plaintiff Tegan S.
stopped working as a Head Start teacher in 2015 due to the limiting effects of fibromyalgia,
which was being treated by her long-time treating rheumatologist, Dr. Edward Reardon.  In
January 2016, she applied for Disability Insurance Benefits ("DIB") under the Social Security
Act, 42 U.S.C. § 405(g).  Although fibromyalgia was found to be a medically determinable
impairment, her disability claim was denied because she was nevertheless found capable of
medium level work.  A year after that adverse decision, Plaintiff tried again, filing the current
applications for DIB and Supplemental Security Income ("SSI").  As relevant to the Court,[1] these
applications are based on fibromyalgia, degenerative disc disease and anxiety and depression.
After both of them were denied by an administrative law judge ("ALJ"), Plaintiff took her claims
to the Appeals Council, which declined review.  Next, she challenged the Commissioner's
adverse determination by filing her complaint in this Court.  Following a hearing held on June 8,
2021, as well as post-hearing filings, the parties' dueling summary judgment motions (ECF Nos.
13, 14) are now ripe for decision.

---

[1] During the hearing on June 8, 2021, Plaintiff agreed that her other alleged impairments are not in issue.

To sustain her burden of buttressing her claim of disabling functional limitations caused by fibromyalgia, Plaintiff relied on her statements regarding the severity of her symptoms, the ongoing treating records of her rheumatologist, Dr. Reardon, and those of her primary care physician, Dr. Ellen Hight, as well as on a detailed "Fibromyalgia Medical Source Statement" ("Fibromyalgia Statement") written and signed by Dr. Reardon. Unaware either of Dr. Hight's treating records or of Dr. Reardon's Fibromyalgia Statement (or the balance of his treating notes), the non-examining State agency ("SA") physicians looked at the limited set (from January 2016 through January 2018) of Dr. Reardon's treating notes that had been provided as of the date of their review. Noting – accurately – that Dr. Reardon's treating notes are skimpy, handwritten and largely illegible, the non-examining SA physicians found that "[c]urrent evidence does not support diagnosis of FMS [fibromyalgia syndrome] and rheumatology MER [medical evidence of record] is incomplete and illegible." Tr. 88, 118. In reliance on this administrative medical finding, the ALJ stopped further consideration of fibromyalgia at Step Two, finding that, "the record does not indicate a diagnosis for fibromyalgia . . . . Therefore, the undersigned finds this to be a non-medically determinable impairment." Tr.19. Based on this finding, the ALJ's residual functional capacity ("RFC")[2] analysis largely rejected the most significant evidence of record – Plaintiff's subjective complaints of pain – based on the lack of objective clinical findings to support them.

In taking this approach, the ALJ ignored his duty to develop the record as established by 20 C.F.R. §§ 404.1512(b), 404.1520b(b),[3] and by controlling guidance from the First Circuit,

---

[2] Residual functional capacity is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

[3] The Social Security Administration has promulgated identical sets of regulations governing eligibility for DIB and SSI. See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986). For simplicity, I cite to one set of regulations only.

including <u>Torres-Pagan v. Berryhill</u>, 899 F.3d 54, 59 (1st Cir. 2018) (reaffirming ALJ's duty to develop record, which is heightened if claimant is *pro se*), and <u>Carbone v. Sullivan</u>, 960 F.2d 143, 1992 WL 75143, at *7 (1st Cir. Apr. 14, 1992) (per curiam) (unpublished table decision) (because "disability determination proceedings are nonadversarial in nature," Secretary, "once alerted by the record to the presence of an issue, must develop the record further") (internal quotation mark omitted).  Because this and other errors tainted the ALJ's RFC finding, this matter must be remanded for further proceedings.[4]

## I.    BACKGROUND[5]

Plaintiff's treating relationship with her rheumatologist, Dr. Reardon, began in 2000, but the earliest records that he submitted for these applications go back to January 2016.  Tr. 351-95.  Nothing from Plaintiff's prior application was copied into the record for the current applications; therefore, it is unknown what evidence led to the Commissioner's finding that, as of March 2017, Plaintiff met the criteria listed in SSR 12-2p[6] to support a diagnosis of fibromyalgia.  <u>See</u> Tr. 88, 118.  Specifically, it is unknown whether Dr. Reardon provided longitudinal treating notes for the prior application that reflect medical history and physical examinations establishing the

---

[4] Plaintiff also challenged the ALJ's mental RFC findings.  For the reasons stated on the record during the hearing held on June 8, 2021, these arguments are unavailing.  In brief, the ALJ appropriately relied on the non-examining psychologists and psychiatrist, who interpreted the consulting reports of the two examining psychologists (Drs. Louis Turchetta and Louis Cerbo).  The only inconsistent evidence is the opinion of a social worker, which the ALJ correctly found unpersuasive because it clashed with the social worker's treating records reflecting generally moderate symptoms, as well as with the balance of the treating record, which reflects mostly normal mental status examinations.  There is no error in the ALJ's determination that Plaintiff's mental impairments caused significant, but not disabling, functional limitations.

[5] During the hearing held on June 8, 2021, the Court placed a more complete exposition of the pertinent facts on the record.  That survey is incorporated by reference in this memorandum and order.  The facts in the text are limited to what is pertinent to pain and fibromyalgia.

[6] Social Security Ruling 12-2p, 2012 WL 3104869, at *1 (July 25, 2012), is entitled "Evaluation of Fibromyalgia." It was issued in 2012 to assist adjudicators in recognition of the competing realities that fibromyalgia is an impairment that can truly be disabling, but also one whose subjective nature makes it vulnerable to faking or exaggeration.  <u>Ferrazzano-Mazza v. Colvin</u>, CA No. 14-239 ML, 2015 WL 4879002, at *15 (D.R.I. Aug. 14, 2015).

symptoms, signs and co-occurring conditions that would support a fibromyalgia diagnosis as listed in Subparts I and II of SSR 12-2p. 2012 WL 3104869, at *2.

The portion of the current application file that was reviewed by the non-examining SA physicians contains Dr. Reardon's treating notes from January 2016 through January 2018. Tr. 351-94. These consist of a one-page form for each appointment with a few mostly illegible handwritten entries and checkmarks that make it impossible to ascertain even whether an examination was conducted. For example, the pre-onset note for an appointment on June 16, 2016, (a period during which the Commissioner found fibromyalgia to be a medically determinable impairment) consists of ten barely legible words or acronyms, one of which might be "FM." Tr. 353. A post-onset example is the treating note from July 17, 2017, which has six words or acronyms, one of which appears to be "FM." Tr. 383. The last note in the set reviewed by the non-examining SA physicians (January 8, 2018) is similar: it has eight words or acronyms one of which appears to be "FM." Tr. 363. At the same time, potentially reflective of Dr. Reardon's assessment of the severity of Plaintiff's pain symptoms, consistently throughout the treating period reviewed by the non-examining SA physicians, he prescribed opiate-based medication to address pain and arranged for laboratory testing to monitor the use of such pain medication. Tr. 354, 358-61, 364-74. Importantly, the record is devoid of a scintilla of a suggestion that Plaintiff engaged in drug-seeking behavior or ever abused the powerful opiates that Dr. Reardon was prescribing. Nor is there a hint that Plaintiff is a malingerer.

During the initial and reconsideration phases of the administrative processing of the applications, Plaintiff's mental health impairments were the primary focus of attention. See n.4 *supra*. As to Plaintiff's physical RFC, the initial and reconsideration phase SA physicians reviewed the set of treating notes from Dr. Reardon and records from the medical group dealing

with Plaintiff's complaint regarding her lumbar spine. These non-examining physicians both noted that Dr. Reardon's "MER is incomplete and illegible," while the objective clinical evidence regarding the lumbar spine is "minimal" and "mild." Tr. 88, 118. Based on these observations, they found that the evidence "does not support [a] diagnosis of" fibromyalgia and opined to functional limitations that would permit work at the light exertional level with additional postural limitations.

After the non-examining file review was concluded, more medical records pertaining to fibromyalgia – from Dr. Reardon and Dr. Hight, the primary care physician, – were submitted. Tr. 426-47, 474-523.

First, from Dr. Reardon, the ALJ received additional treating records for the period from May 2018 through May 2019. These treating notes are just as lacking in content and difficult to read and understand as the earlier set, except that they appear to omit any markings that might be interpreted as "FM." For example, the parties concur that almost illegible handwriting on the last treating note (May 24, 2019) may be interpreted as: "Chronic Pain continuing," "No thing new on exam," and "She is stable." Tr. 435. Nevertheless, throughout this latter period, Dr. Reardon continued the same treatment – the prescription of opiates powerful enough to require laboratory monitoring. E.g., 433-34, 437-43, 446-47. In addition, Dr. Reardon submitted a form he had signed in 2019 to enable Plaintiff to get a handicap parking placard based on limitations impacting her ability to walk. Tr. 431-32. Finally, Dr. Reardon submitted his detailed Fibromyalgia Statement.[7]

---

[7] The Court notes that one of the ALJ's "reasons" for rejecting Dr. Reardon's Fibromyalgia Statement is that it was submitted on a pre-printed form. Tr. 25. This "reason" makes no sense – while the Statement is certainly based on a form, the handwritten responses to the questions on the form are detailed, clear and responsive.

The Fibromyalgia Statement was signed on June 13, 2019.  In it, Dr. Reardon opined that

Plaintiff meets the American College of Rheumatology criteria for fibromyalgia, that she suffers

from chronic and severe pain, that her prognosis is poor, and that her impairment may be

expected to last at least a year.  He identified specific symptoms, including multiple tender

points, sleep issues, chronic fatigue, stiffness, weakness, irritable bowel, dysmenorrhea, anxiety,

depression, mitral valve prolapse, hypothyroidism and carpal/tarsal tunnel syndrome.  For

supportive clinical findings, Dr. Reardon wrote, "see records attached."  Tr. 427.  However, the

records that were provided with the Statement are those described above; they say almost

nothing, are largely illegible and certainly do not reflect any clinical findings.[8]  The balance of

the Fibromyalgia Statement contains Dr. Reardon's detailed opinion regarding Plaintiff's

extreme (and work preclusive) functional limitations.  Tr. 428-30.

The second set of records not seen by the non-examining SA physicians are those from

the primary care physician, Dr. Hight.  Tr. 474-523.  These span the entire period in issue, from

March 28, 2017, through May 14, 2019.  They consistently list the diagnosis of fibromyalgia,

including reference to "fibromyalgia flare up."  E.g., Tr. 476.  Despite her largely normal

physical examinations and her awareness that Dr. Reardon was Plaintiff's treating

rheumatologist, Dr. Hight prescribed medication for fibromyalgia (Cymbalta).[9]  Tr. 475, 480,

486, 488, 499, 504, 505, 515.  In addition to fibromyalgia, Dr. Hight diagnosed GERD, one of

the co-occurring (with fibromyalgia) conditions listed in SSR 12-2p; Dr. Hight's notes also

---

[8] While many of the symptoms that Dr. Reardon listed are, by their nature, based on the patient's subjective report, some of them are reflected in clinical observations that are elsewhere in the record, such as in Dr. Hight's treating notes.  See Tr. 474-523.  Others, such as depression and anxiety, were diagnosed by the consulting examiners.  Tr. 407-17.  Still others do not seem to be mentioned anywhere in this record (such as carpal/tarsal tunnel syndrome), while at least one (mitral valve prolapse) appears to be ruled out by the testing that confirmed Plaintiff's tachycardia. Tr. 424.

[9] Cymbalta was also prescribed for anxiety.  Tr. 502, 529.

support several of the symptoms listed by Dr. Reardon in his Fibromyalgia Statement, including hypothyroidism, dysmenorrhea, decreased range of motion and muscle tenderness.  At the last appointment of record with Dr. Hight, her treating notes list fibromyalgia as one of Plaintiff's current – albeit "stable" – diagnoses, with the plan to "Cont current treatment" and to "f/u Rheum as planned."  Tr. 519.

Despite all this information that the SA physicians did not see, the ALJ found the SA physicians' medical findings to be "persuasive," Tr. 25, and relied on them to rule out fibromyalgia at Step Two because of the "incomplete and illegible," Tr. 88, 118, nature of Dr. Reardon's treating notes.  Tr. 19.  With no fibromyalgia to consider, the ALJ steeply discounted Plaintiff's statements about the severity of her subjective symptoms of pain largely by reference to the lack of objective medical evidence to support them and her ability to do some chores at home with help and drive short distances.  Tr. 24.  He largely ignored the powerful pain medications that Plaintiff was prescribed to address these symptoms.  He rejected Dr. Reardon's Fibromyalgia Statement as "unpersuasive" because of its inconsistency with his treating notes and Plaintiff's functioning (that is, her ability to "do chores with help"), because it was submitted on a pre-printed questionnaire and because it failed to refer to objective medical findings.  Tr. 25. With these foundational findings, the ALJ's RFC resulted in the conclusion that Plaintiff was not disabled at any relevant time.  Tr. 27.

## II.   LAW AND ANALYSIS

"'The First Circuit has stated that courts should ensure 'a just outcome' in Social Security disability claims.'"  Mary K v. Berryhill, 317 F. Supp. 3d 664, 667 (D.R.I. 2018) (quoting Pelletier v. Sec'y of Health, Educ. & Welfare, 525 F.2d 158, 161 (1st Cir. 1975)).  "[T]he Social Security Act is to be construed liberally to effectuate its general purpose of easing the insecurity

of life." Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965). However, when the

Commissioner's decision is supported by substantial evidence, the court must affirm, even if the

court would have reached a contrary result as finder of fact. Pedro B. v. Saul, C.A. No. 19-

00347-WES, 2020 WL 1026817, at *1 (D.R.I. Mar. 3, 2020). On the other hand, remand is

required if the ALJ's decision is based on the administrative medical findings of "state-agency

physicians [who] were not privy to parts of [plaintiff's] medical record [which] detracts from the

weight that can be afforded their opinions." Andrea T. v. Saul, C.A. No. 19-505WES, 2020 WL

2115898, at *5 (D.R.I. May 4, 2020) (quoting Virgen C. v. Berryhill, C.A. No. 16-480 WES,

2018 WL 4693954, at *2-3 (D.R.I. Sept. 30, 2018)) (second and third alterations in original). In

that regard, the Social Security regulations require that the ALJ must "consider whether new

evidence we receive after the . . . prior administrative medical finding makes the medical opinion

or prior administrative medical finding more or less persuasive." 20 C.F.R. § 404.1520c(c)(5).

> This is essentially a case about pain; as Plaintiff told the ALJ:
>
> I have a lot of pain, all over pain from the fibromyalgia. I can't do activities. I
> mostly have to lay down or recline. If I try, I can't make it more than like 15
> minutes to, before the pain starts to hurt."

Tr. 39. In such a case, the ALJ must assess the severity of alleged pain by making a credibility

determination regarding the claimant's subjective descriptions of the pain. Da Rosa v. Sec'y of

Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986). If the ALJ decides that an applicant's

testimony about her pain is not credible, he "must make specific findings as to the relevant

evidence he considered in determining to disbelieve the [claimant]." Id. Our Circuit has

provided seminal guidance regarding how to assess the degree to which pain causes functional

limitations. See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 29 (1st Cir. 1986)

(listing what have come to be referred to as Avery factors); see Henderson v. Saul, Civil Action

No. 19-11012-PBS, 2020 WL 1190821, at *7 (D. Mass. Mar. 12, 2020) (failure to address Avery factors in explaining analysis of claim based on fibromyalgia is error requiring remand). Hearing officers are "not free to discount pain complaints simply because the alleged severity thereof is not corroborated by objective medical findings." Carbone, 1992 WL 75143, at *5 (citing Da Rosa, 803 F.2d at 25-26). The First Circuit recently reemphasized that, in the absence of direct evidence to rebut a claimant's testimony about subjective symptoms, such statements should be taken as true. Sacilowski v. Saul, 959 F.3d 431, 441 (1st Cir. 2020). Sacilowski specifically cautions that an ALJ must be cautious in treating the ability to engage in certain daily home activities as the basis for a finding of direct rebuttal of subjective claims. Id. at 440.

When the pain is caused by alleged fibromyalgia, the pain assessment is of pivotal importance because fibromyalgia limitations are "of necessity based on the claimant's subjective allegations as the doctor's examinations of the claimant were, with the exception of the presence of tender points, relatively benign." Johnson v. Astrue, 597 F.3d 409, 412 (1st Cir. 2009); see Bergeron v. Colvin, C.A. No. 15-467M, 2016 WL 8673138, at *9 (D.R.I. Aug. 19, 2016) ("credibility determination is critical when the claim of disability is based on fibromyalgia"). That is, "a patient's report of complaints, or history, is an essential diagnostic tool" in fibromyalgia cases. Johnson, 597 F.3d at 412 (citation omitted). It would be error for an ALJ to "basically rel[y] on the lack of objective findings to substantiate [a claimant's] condition, [when] such a lack is what can be expected in fibromyalgia cases." Id. at 412-13. "Fibromyalgia is a condition which 'causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances' and '[u]nlike other medical conditions, . . . is not amenable to objective diagnosis and standard clinical tests are "not highly relevant" in diagnosing or assessing fibromyalgia or its severity.'" Small v. Astrue, 840 F. Supp. 2d 458, 464 (D. Mass.

2012) (quoting Preston v. Sec'y of Health & Human Servs., 854 F.2d 815, 817, 820 (6th Cir. 1988)).  Once a diagnosis of fibromyalgia is established, an ALJ "'ha[s] no choice but to conclude that the claimant suffer[ed] from the symptoms usually associated with [such condition], unless there was substantial evidence in the record to support a finding that claimant did not endure a particular symptom or symptoms.'"  Johnson, 597 F.3d at 413-14 (second and third alteration in original) (quoting Rose v. Shalala, 34 F.3d 13, 18 (1st Cir. 1994)).  To provide guidance to adjudicators facing disability claims based on fibromyalgia, the Commissioner issued SSR 12-2p.  It sets out the diagnostic criteria for fibromyalgia and emphasizes that subjective pain and fatigue can be disabling:

> Widespread pain and other symptoms associated with FM, such as fatigue, may result in exertional limitations that prevent a person from doing the full range of unskilled work in one or more of the exertional categories . . . .  People with FM may also have nonexertional physical or mental limitations because of their pain or other symptoms.  Some may have environmental restrictions, which are also nonexertional.

SSR 12-2p at VI(E)(1), 2012 WL 3104869, at *6.

The disability claimant shoulders the burden of proof at Steps One through Four of the administrative process to establish that fibromyalgia is a medically determinable impairment causing specific functional limitations.  Small, 840 F. Supp. 2d at 462.  Nevertheless, it is a fundamental tenet of the Social Security framework that, at every Step, the ALJ retains the duty to fully and fairly develop the record.  Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991); Channy V. v. Saul, C.A. No. 20-00090-JJM, 2020 WL 5810187, at *3 (D.R.I. Sept. 30, 2020), adopted, 2020 WL 6136158 (D.R.I. Oct. 19, 2020); see Rackliff v. Berryhill, No. 1:16-cv-00250-JHR, 2017 WL 2266796, at *4 (D. Me. May 22, 2017) ("First Circuit has recognized that administrative law judges have a general duty to develop the record").

This duty is memorialized in 20 C.F.R. § 404.1512(b), which provides that "[o]ur

responsibility" requires the development of the medical record, which may include ordering a

consultative examination.  It is further developed in 20 C.F.R. § 404.1520b(b)(2), which

provides:

> If the evidence is consistent but we have insufficient evidence to determine
> whether you are disabled, or if after considering the evidence we determine we
> cannot reach a conclusion about whether you are disabled, we will determine the
> best way to resolve the inconsistency or insufficiency, [including] (i) We may
> recontact your medical source . . .; (ii) We may request additional existing
> evidence; (iii) We may ask you to undergo a consultative examination . . .; or (iv)
> We may ask you or others for more information.

20 C.F.R. § 404.1520b(b)(2).  In the case of fibromyalgia, SSR 12-2p emphasizes the importance

of this duty: "when there is insufficient evidence for us to determine whether the person has an

MDI of FM or is disabled . . . [w]e may recontact the person's treating or other source(s) to see if

the information we need is available."  SSR 12-2p at III(C)(1)(a), 2012 WL 3104869, at *4.  An

ALJ's failure to discharge this duty requires remand when there is an obvious gap in the medical

record, particularly if the pain is the alleged cause of claimed functional limitations.  See, e.g.,

Carbone, 1992 WL 75143, at *7 (ALJ's duty to develop record includes obligation to have

"satisfied his burden under Avery"); Jennifer H. v. Comm'r of Soc. Sec., CASE NO. C20-94-

BAT, 2020 WL 7138007, at *3 (W.D. Wash. Dec. 7, 2020) (ALJ's duty to develop record

regarding fibromyalgia is triggered if there is ambiguous evidence or if record is inadequate to

allow for proper evaluation of evidence; remand ordered to recontact treating physician who

failed to provide useful statement on degree of limitations); Richard M. v. Berryhill, Civ. No. 17-

5125 (ADM/BRT), 2018 WL 8224880, at *4-6 (D. Minn. Dec. 17, 2018), adopted, 2019 WL

1075885 (D. Minn. Mar. 7, 2019) ("Once an ALJ is made aware of a crucial issue that might

change the outcome of a case, the ALJ must conduct further inquiry to fully develop the record";

remand ordered to recontact treating physician to clarify basis for opinion regarding limitations caused by gout and renal insufficiency).

When these legal principles are applied to this case, it is clear that the ALJ erred and remand is required. The ALJ was presented with a record establishing a claimant who had previously been determined to suffer from function-limiting fibromyalgia[10]; who presented longitudinal treating records from a rheumatologist and a primary care physician, both endorsing the diagnosis of fibromyalgia and both treating her with powerful pain medications; who supplied a treating source opinion from the rheumatologist endorsing the fibromyalgia diagnosis and its function-limiting pain; and who testified at the hearing regarding the disabling effects of the pain. Further, the complete record (much of which was not available to the non-examining physicians) included Dr. Hight's records, which reflect clinical findings regarding at least some of the SSR 12-2p signs and co-occurring conditions that undergird a diagnosis of fibromyalgia. The problem was that the SA physicians, unaware of Dr. Hight's treating notes and Dr. Reardon's Fibromyalgia Statement, rejected fibromyalgia out of the gate because of Dr. Reardon's "incomplete and illegible" treating notes. This problem is exacerbated by Dr. Reardon's Fibromyalgia Statement, which refers the reader to clinical findings in "records attached," yet the attached records are only the same poor quality "incomplete and illegible" treating notes.

This is the quintessential circumstance where the ALJ should, at a minimum, have attempted to recontact the treating physician (Dr. Reardon) to find out whether the clinical information that he references in his Fibromyalgia Statement and that is needed to determine the

---

[10] This is not to imply that the ALJ is bound by the prior ALJ's finding that Plaintiff suffered from fibromyalgia. He is not. Rather, this fact suggests that the lack of evidence in Dr. Reardon's current treating records represents an obvious gap. Jerome M. v. Saul, 19-CV-289 (JLS), 2020 WL 7385468, at *4 (W.D.N.Y. Dec. 15, 2020) ("obvious gap in the record should prompt the ALJ to seek additional information – i.e., to develop the record").

claim is available. That is, this claimant has amply sustained her burden, but the pivotal treating source (Dr. Reardon) left an obvious gap by providing palpably incomplete information because of his apparently established custom of recording such skimpy treating notes. As a result, the ALJ had insufficient evidence to determine whether fibromyalgia was a medically determinable impairment. See SSR 12-2p at III(C), 2012 WL 3104869, at *4. In such circumstance, the ALJ was required at least to "try to resolve the inconsistency or insufficiency," either by recontacting Dr. Reardon or by taking one or more of the other steps listed in 20 C.F.R. § 404.1520b(b)(2) (such as asking for a consultative examination) in an attempt to develop the record. 20 C.F.R. § 404.1520b(b)(2) (emphasis supplied). His failure to do so is error requiring remand.

This error is compounded by the ALJ's reliance on the non-examining SA physicians whose administrative medical findings did not amount to substantial evidence because they lacked access to Dr. Hight's records and Dr. Reardon's Fibromyalgia Statement. Virgen C., 2018 WL 4693954, at *2-3. Lacking the Hight records, the administrative medical findings on fibromyalgia simply highlight that the gap caused by Dr. Reardon's "incomplete and illegible" treating notes is the crux of their analysis – this makes clear that the unseen, but more developed, Hight records "detract[] from the weight that can be afforded their opinions." Id. at *3. Also erroneous is the ALJ's failure to follow the Avery template (particularly his omission of the Avery factor requiring consideration of "any pain medication") in assessing the credibility of Plaintiff's subjective statements about pain. Avery, 797 F.2d at 29. The Avery error was exacerbated by the ALJ's overreliance on Plaintiff's limited ability to function at home as undermining what appear to be otherwise unrebutted statements. See Sacilowski, 959 F.3d at 441.

## III.    CONCLUSION

Based on the foregoing, Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 13) is GRANTED and Defendant's Motion for Entry of an Order Affirming the Decision of the Commissioner (ECF No. 14) is DENIED.  This matter is remanded for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).  On remand, the ALJ shall develop the record by seeking to fill in the gap created by Dr. Reardon's inadequate treating notes by recontacting Dr. Reardon or by taking other actions as required by 20 C.F.R. § 404.1520b(b)(2).  On remand, the ALJ should also consider whether to ask for a medical expert to assess whether fibromyalgia is a medically determinable impairment in light of the entire treating record (this time considering Dr. Hight's treating notes), including whatever might be procured as a result of compliance with § 404.1520b(b)(2).  Further, on remand, the ALJ should look anew at the severity of Plaintiff's pain, including the credibility of her subjective statements describing pain, based on the Avery factors and Sacilowski, and if fibromyalgia is established as a diagnosis, based on the guiding principles in Johnson.

So ordered.

ENTER:

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
June 23, 2021